UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:22-CR-00033 NODJ-BAM |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS THE INDICTMENT[1] |
| v. | (Doc. 36) |
| CRUZ GARCIA-MARTINEZ, | |
| Defendant. | |

Cruz Garcia-Martinez has been charged with returning to this country after having been deported previously and without having permission to return. (Doc. 13 at 1-2) The government charges that Mr. Garcia-Martinez has violated Title 8, United States Code section 1326. Mr. Garcia-Martinez moves to dismiss the indictment because he contends that § 1326, though facially neutral, has a discriminatory purpose and has a disparate impact on a disfavored group. (Doc. 36) Because the Court finds Congress enacted the statute without discriminatory animus, the motion is **DENIED**.

I.   **Background**

The government alleges that in January 2013, Cruz Garcia-Martinez was convicted of a felony:

---

[1] In the interests of justice and to address the heavy caseloads in the Fresno courthouse, the undersigned resolves only the pending motion in this case. Nevertheless, until otherwise ordered by the court, the case will remain unassigned and will retain case number set forth above. The Court allowed the parties the opportunity to object to the Court determining the motion on the briefs and the recording of the oral argument. (Doc. 51) They did not object. The Court has considered recording of the oral argument (Doc. 41) and the briefs (Docs. 36, 39, 40, 44, 46)

1

"Possession of Marijuana with intent to deliver, in violation of Nebraska Code 3564." (Doc. 13 at 1). The indictment alleges that after this conviction, on November 22, 2013, Mr. Garcia-Martinez was deported from the United States but was found in the country again in July 2020 without having received permission to return. *Id*. The indictment charges him with a violation of 8 U.S.C. section 1326(a), (b)(2). If convicted, Mr. Garcia-Martinez faces up to 20 years imprisonment and/or a fine of up to $250,000. (Doc. 13-1)

Mr. Garcia-Martinez argues that § 1326 arose out of several immigration laws enacted in the 1920s—most notably, the Undesirables Aliens Act of 1929—which was motivated by explicit discrimination against Mexican nationals and others from Latin America.[2] (Doc. 36 at 15-20) The government counters that the Immigration and Nationality Act of 1952 is the source of the statute at issue, such that the motives—even if discriminatory—at the time that the 1929 Act was passed, are not relevant. (Doc. 36 at 12-14)

Mr. Garcia-Martinez's motion relies primarily on the rationale outlined in *United States v. Carrillo-Lopez*, 555 F. Supp. 3d 996 (D. Nev. 2021), rev'd and remanded, No. 21-10233, 2023 WL 3587596 (9th Cir. May 22, 2023). However, after the initial brief was filed, the Ninth Circuit Court of Appeals issued a resounding rejection of that rationale in *United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023)[3] and for these reasons, the motion is **DENIED**.

**II.     Analysis**

    **I.     Title 8 U.S.C. § 1326 does not violate the Fifth Amendment**

Mr. Garcia-Martinez expends most of his effort in his moving papers demonstrating that the legislation passed by Congress in the 1920s, was motivated by discriminatory animus toward those from Latin America. In *United States v. Carrillo-Lopez*, 68 F.4th at 1141-1142, the Ninth Circuit determined that even if the precursor of 8 U.S.C. § 1326 was enacted with an "invidious intent," when taken with the "strong 'presumption of good faith' on the part of legislators" in enacting the current legislation, "[p]ast discrimination cannot, in the manner of original sin, condemn [subsequent]

---

[2] Counsel has filed this same motion in several cases. Thus, the Court responds to the same arguments in the same way as it has on several prior occasions.
[3] The Court recognizes that the petition for certiorari was filed on December 11, 2023.

2

1  governmental action that is not itself unlawful." Thus, the remaining question presented by Mr.
2  Garcia-Martinez is whether the subsequent enactments violate the Fifth Amendment. *Carrillo-Lopez*
3  determined that they do not.

4       Mr. Garcia-Martinez does not claim that § 1326 is not facially neutral, and *Carrillo-Lopez*
5  agrees. *Id*. at 1143. *Carrillo-Lopez*[4] found significant that in formulating the Immigration and
6  Nationality Act, the senate spent three years to conduct a "most intensive and searching investigation"
7  requiring the subcommittee to examine reports and statistical data, officials and employees, and to
8  make field investigations "throughout Europe and the United States, as well as at the Mexican border,
9  in Canadian border cities, and in Havana, Cuba." *Id*. The committee reviewed rules, regulations,
10 treaties, Executive Orders, and legislative enactments to draft an omnibus bill embodying the entirety
11 of US immigration and naturalization laws. *Id.* This resulted in more than 900 pages written by the
12 committee, which addressed "each population group" in the Americas. *Id*. at 1143-1144.

13      Soon thereafter, when considering repealing the then-current immigration laws and enacting a
14 new immigration and naturalization scheme, the Senate held hearings and debates indicating
15 "Congress was deeply concerned with many facets of the [INA], but §§ 1325 and 1326 were not
16 among the debated sections." *Carrillo* at 1146-1147. "There was no discussion of Section 276's
17 impact on Mexicans or other Central and South Americans. *Id*. Though President Truman vetoed the
18 bill, his concern was over the fact that he believed the bill favored immigrants from England, Ireland,
19 and Germany over those from Southern and Eastern Europe. *Id*. He did not mention Mexican citizens
20 nor citizens from other Central or South American countries. *Id*. Indeed, the "1924 Act, which
21 introduced the national-origin quota system, exempted all Western Hemisphere countries from the
22 system." *Id.* at 1147, n. 8.

23      *Carrillo-Lopez* next considered whether in enacting § 1326, Congress was motivated to
24 discriminate against those coming from Mexico, Central and South America. *Carrillo* at 1147. The
25 Court found that it was not. *Id*. The Court found no language denigrating Latino immigrants in the

---

[4] Though the Court declined to determine whether the test outlined in *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-266 applies to immigration laws, the Court determined that even when applying these standards to 8 U.S.C. § 1326, the equal protection challenge fails. *Carrillo* at *5.

Senate report and no evidence that the fact that Congress overrode the presidential veto demonstrated discriminatory animus. *Id*. Finally, the *Carrillo* court found that "the INA was not a 'reenactment' of the 1929 Act, but rather a broad reformulation of the nation's immigration laws, which included a recommendation 'that the time ha[d] come to erase from our statute books any discrimination against a person desiring to immigrate to this country or to become a naturalized citizen, if such discrimination [was] based solely on race.'" *Id* at 1151. The Court noted that from the time Congress passed the Undesirable Aliens Act of 1929, there was a 96 percent turnover in the representatives in that body. *Id.* Though two members participated in debating both Acts, and both spoke of maintaining "homogeneity" and keeping "undesirables" out of the country, *Carrillo-Lopez* held that, "The statements of Representative Thomas Jenkins and Senator Walter George, which in any event were made in the context of debating the national-origin quota system rather than in discussing § 1326, are not probative of the intent of the legislature as a whole." *Id.* at 1150.

Finally, the Court rejected that there was sufficient evidence that there was a disparate impact on Mexicans or those from Central and South Americans. *Carillo* at 1152-1153. The Court observed that though "99% of prosecutions for illegal reentry are against Mexican or Central and South American defendants . . . This data has little probative value, however, because it relates to a period that is more than 45 years after the INA was enacted. After such a long passage of time, this information does not raise the inference that Congress enacted § 1326 in 1952 because of its impact on Mexicans and other Central and South Americans." *Id*. Moreover, the Court noted that the proximity of Mexico and the fact that the countries share a 1,900-mile border, provides a "clear geographic reason for disproportionate impact on Mexicans and other Central and South Americans [which] undermines any inference of discriminatory motive." *Id*. at 1153. The Court also noted that people coming to the US from these countries "make up a large share of the unauthorized alien population" and, consequently, they make up a large share of those being removed from this country. *Id*. The proximity of their home countries to the southern border of the United States also makes it a simpler proposition to remove them back to these countries than to those that lay across the ocean. *Id*. Thus, when construing the congressional action with the presumption that it acted in good faith, the Court determined that there is insufficient evidence to find that Congress enacted 8 U.S.C. § 1326 with racial

4

animus. *Id.* For these reasons, the Court **ORDERS**:

    1.    The motion to dismiss the indictment is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 21, 2023**

                                    UNITED STATES DISTRICT JUDGE